Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN KIRBY,<br><br>   Plaintiff,<br><br> v.<br><br>BOROUGH OF WOODCLIFF LAKE, *et al.*,<br><br>   Defendants. | Civil Action No. 20-cv-01670<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

  This matter primarily involves 42 U.S.C. § 1983 claims arising out of Plaintiff John Kirby's arrest in February 2018. The following Defendants filed motions to dismiss the First Amended Complaint: (1) the Bergen County Prosecutor's Office ("BCPO"), D.E. 51; (2) Christopher C. Botta, D.E. 53; and (3) the County of Bergen ("County"), D.E. 69. Plaintiff filed briefs in opposition to each motion, D.E. 57, 61, 72, and the moving Defendants each filed a brief in reply, D.E. 58, 62, 73. The Court reviewed the parties' submissions[1] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth

---

[1] The BCPO's brief in support of its motion, D.E. 51-1, will be referred to as "BCPO Br."; Kirby's brief in opposition to the BCPO's motion, D.E. 57, will be referred to as "BCPO Opp."; and the BCPO's reply brief, D.E. 58, will be referred to as "BCPO Reply." Botta's brief in support of his motion, D.E. 53, will be referred to as "Botta Br."; Kirby's brief in opposition to Botta's motion, D.E. 61, will be referred to as "Botta Opp."; and Botta's reply brief, D.E. 62, will be referred to as "Botta Reply." The County's brief in support of its motion, D.E. 69-8, will be referred to as "County Br."; Kirby's brief in opposition to the County's motion, D.E. 72, will be referred to as "County Opp."; and the County's reply brief, D.E. 73, will be referred to as "County Reply."

below, the BCPO's motion (D.E. 51) is **GRANTED in part** and **DENIED in part**, the County's motion (D.E. 69) is **GRANTED**, and Botta's motion (D.E. 53) is **DENIED**.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 18, 2018, Plaintiff John Kirby; Tammy Kwilecki (Plaintiff's then girlfriend); and two of Kwilecki's sons, Julian and Jacob McKean, attended a wedding at Rockleigh Country Club in New Jersey.[2] First Am. Compl. ("FAC.") ¶¶ 18-20, D.E. 49. After the wedding, all four went to a Hilton in Woodcliff Lake, New Jersey. *Id*. Shortly after arriving, Kirby was allegedly assaulted by a group of individuals, including Julian and Jacob. *Id*. ¶ 21. Officers from the Woodcliff Lake Police Department ("WLPD") responded to the scene. *Id*. ¶ 22. Upon the officers' arrival, Kwilecki told the officers that Kirby had assaulted her. *Id*. ¶ 23. Kirby was subsequently arrested for simple assault in violation of N.J. Stat. Ann. § 2C:12-1(a)(1). *Id*. ¶ 24. Kirby alleges that he did not assault Kwilecki. *Id.* ¶ 23.

After his arrest, emergency medical personnel took Kirby to the Hackensack University Medical Center where he was treated for injuries, including a facial fracture. *Id*. ¶¶ 26-27. The next day, officers of the WLPD, among others, transported Kirby from the hospital to Bergen County Jail's infirmary unit, against the medical advice of Kirby's doctors. *Id*. ¶¶ 29-31. Kirby alleges that once he was at the jail, he was not provided adequate medical care for his injuries. *Id*. ¶ 32. Kirby was released from custody on February 21, 2018. *Id.* ¶ 34. Shortly after, Kirby returned to his residence in Florida and received additional medical treatment. *Id.* ¶ 43.

---

[2] The facts are derived from Plaintiff's First Amended Complaint ("FAC"). D.E. 49. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

On November 16, 2018, Kirby filed criminal complaints against Julian and Jacob alleging aggravated assault in violation of N.J. Stat. Ann. § 2C:12-1(b). *Id.* ¶ 44. The complaint was forwarded to the BCPO, which downgraded and remanded the matter to municipal court for prosecution. *Id.* ¶¶ 47-48. Kirby's counsel requested a written explanation from the BCPO of the reason for the downgrade, but neither Kirby nor his counsel ever received a response. *Id.* ¶¶ 49-50. Kirby could not attend the first appearance in the matter because he was receiving radiation treatments for cancer. *Id.* ¶¶ 51-52. Kirby's counsel informed Defendant Botta, the municipal prosecutor, of Kirby's circumstances and requested an adjournment so that Kirby could participate. *Id.* ¶ 55. While not clear from the FAC, it appears that the matter was rescheduled. At the first appearance for the assault charges against Jacob and Julian, Botta made an oral application to dismiss the complaints. The municipal judge granted the motion. *Id.* ¶ 57. Kirby alleges that nobody ever contacted him, as a victim, to discuss the case. *Id.* ¶ 58.

On February 17, 2020, Kirby filed his initial Complaint in this matter against the following Defendants: Tammy Kwilecki, the Borough of Woodcliff Lake, the WLPD, the City of Hackensack, the Hackensack Police Department, Dennis DeAngelis, Anthony Jannicelli, Botta, the BCPO, the Bergen County Sheriff's Department, John Does 1-10, and ABC Corporations 1-10. D.E. 1. On July 9, 2020, this Court entered a stipulation dismissing the Complaint as to the City of Hackensack and the Hackensack Police Department. D.E. 20. Kwilecki, Botta, the BCPO, and the Bergen County Sheriff's Department all filed motions to dismiss the complaint. D.E. 4, 24, 31, 37. On March 26, 2021, the Court granted the motions of Botta, the BCPO, and the Bergen County Sheriff's Department. D.E. 45, 46. The Court also partially granted Kwilecki's motion and dismissed the Section 1983 claims asserted against her. *Id.* The Court, however, denied Kwilecki's motion to dismiss state law claims asserted against her pursuant to 28 U.S.C. § 1367.

The Court provided Plaintiff with leave to file an amended complaint as to the claims that were dismissed without prejudice. *Id.* On April 9, 2021, this Court entered a voluntary stipulation of dismissal as to Plaintiff's remaining claims against Kwilecki. D.E. 48.

Plaintiff then filed the FAC on April 26, 2021, which asserts claims against Woodcliff Lake, the WLPD, Deangelis, Jannicelli, Botta, the County, the BCPO and John Doe Defendants. D.E. 49. Plaintiff asserts nine counts in the FAC but only Counts V and IX are presently at issue. In Count V, Plaintiff asserts a *Monell* claim against the County based on the alleged inadequate care that Kirby received at the Bergen County jail. FAC ¶¶ 79-86. The County seeks to dismiss this count. D.E. 49. In Count IX, Plaintiff alleges that Botta and the BCPO violated the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2. FAC ¶¶ 99-100. The BCPO and Botta move to dismiss this count. D.E. 51, 53.

## II.  LEGAL STANDARD

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed when it fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.2002). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While not a "probability requirement,"

4

plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). Additionally, a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### III. ANALYSIS

#### 1. Count V

In Count V, Kirby asserts a *Monell*[3] claim against the County due to the allegedly inadequate medical care that he received as a pretrial detainee at the Bergen County jail. FAC ¶¶ 79-86. The County argues that dismissal is appropriate because Plaintiff still fails to identify a policy or custom that led to a violation of his rights.[4] County Br. at 11-14.

A municipality may be liable under § 1983 only "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S.

---

[3] In *Monell v. Department Social Services of New York City* "the Supreme Court established that municipalities and other government entities were 'persons' subject to liability under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (citing *Monell*, 436 U.S. 658, 690-92 (1978)).

[4] The County provided 106 pages of Plaintiff's medical records while at the County Jail as an exhibit to its motion. The County states that the Court can consider the medical records by converting its motion to dismiss into a motion for summary judgment. County Br. at 1. The Court declines this request and did not consider any of the medical records in deciding the County's motion.

658, 694 (1978)). A policy exists "when a decision-maker with final authority issues an official proclamation, policy, or edict." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal quotations and citations omitted). "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id*. (internal quotations and citations omitted).

This Court dismissed the *Monell* claim in Plaintiff's initial complaint because Plaintiff's allegations about a custom or policy were conclusory. MTD Opinion at 8. Plaintiff's *Monell* claim in the FAC fares no better. Plaintiff alleges that the County's "policy, practice and procedure was not designed to assure that plaintiff, as a pretrial detainee, at the Bergen County Jail received adequate dental/medical attention and treatment." FAC ¶ 80. The alleged policy or practice appears to be that the County knew it would deliver substandard medical care for "serious needs." *Id*. ¶ 83. Plaintiff continues that because of this "policy, practice and procedure," he was not permitted to obtain treatment for his injuries.[5] *Id*. ¶ 81. But outside of his own experience, Plaintiff fails to make any additional plausible allegations  Mere recitation of the elements of a *Monell* claim are insufficient. *See, e.g.*, *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing the claim against the city because the plaintiff failed to plead adequate facts demonstrating the existence of a policy or custom).

Plaintiff again relies on *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003). County Opp. at 9. In *Natale*, the plaintiff provided specific facts through which a reasonable jury could conclude that the defendant "turned a blind eye to an obviously inadequate

---

[5] In Count V, Plaintiff makes passing reference to the fact that he was not permitted to bathe for four days while in jail. FAC ¶ 81. To the extent Plaintiff is still attempting to assert a *Monell* claim based on this allegation, it is dismissed because the allegation is not addressed elsewhere in the FAC or in Plaintiff's opposition brief.

6

practice that was likely to result in the violation of constitutional rights." *Natale*, 318 F.3d at 584. Namely, the Third Circuit relied on corroborating testimony from an employee addressing the defendant's failure to appropriately document new detainees' immediate medical needs during their first few days of incarceration. *Id.* Here, Plaintiff's sole basis to establish that the County failed to provide appropriate medical care is his own experience. Without even considering whether Plaintiff states a claim for inadequate care based on his personal experience, his allegations alone are insufficient to establish a custom or practice.

As a result, Count V is dismissed.

### 2. Count IX

In his initial complaint, Kirby asserted claims against Botta and the BCPO for violations of the Victims' Rights Amendment ("VRA"), N.J. Const. art. One, ¶ 22. Compl. ¶ 122. The Court dismissed this claim because Kirby did not assert the claim pursuant to the NJCRA. The Court explained that "civil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act." MTD Opinion at 11. In the FAC, Kirby now asserts a NJCRA claim alleging that Botta and the BCPO violated the VRA. FAC ¶ 100. This is the only claim that Plaintiff asserts against these Defendants.

The BCPO argues that there is no private right of action for an individual to enforce an alleged violation of the VRA.[6] BCPO Br. at 17-18. The BCPO, however, relies on case law that

---

[6] In their briefs, the BCPO and Plaintiff both address whether there is a private right of action to enforce the Crime Victims' Bill of Rights ("CVBOR"), N.J. Stat. Ann. § 52:4B-36. BCPO Br. at 15-18; BCPO Opp. Br. at 8-9. In the prior Opinion, this Court dismissed Plaintiff's CVBOR claim because Plaintiff failed to address whether there is a private right of action in the CVBOR. MTD Opinion at 11. The Court does not view Count IX in the FAC as raising a CVBOR claim because Plaintiff explicitly states that it is a NJCRA claim. Plaintiff may not assert a CVBOR claim through his opposition brief. *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.

instructs courts how to determine whether there is an implied private right of action in a statute. *See, e.g.*, *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1143 (N.J. 2001). The VRA is a constitutional amendment. Moreover, the NJCRA expressly provides a private right of action to enforce alleged violations of the New Jersey constitution. Specifically, the NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2. The BCPO does not point the Court to any legal authority demonstrating that the VRA is exempted from the NJCRA, or even more generally, that any other provision of the New Jersey Constitution is not covered by the NJCRA.[7] As a result, the Court assumes, without deciding, that Plaintiff may assert his alleged violation of the VRA as a NJCRA claim.

Turning to the merits of Plaintiff's claim, the VRA provides that:

> A victim of a crime shall be treated with fairness, compassion and respect by the criminal justice system. A victim of a crime shall not be denied the right to be present at public judicial proceedings except when, prior to completing testimony as a witness, the victim is properly sequestered in accordance with law or the Rules Governing the Courts of the State of New Jersey. A victim of a crime shall be entitled to those rights and remedies as may be

---

1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)). Thus, the parties' arguments about whether there is an implied right of action in the CVBOR are not considered.

[7] While not raised by any party, the Court notes that the NJCRA "provides remedies only for the violation of substantive rights," and not procedural due process violations. *Coles v. Carlini*, 162 F. Supp. 3d 380, 403 (D.N.J. 2015) (quoting *Tumpson v. Farina*, 95 A.3d 210, 225 (N.J. 2014)).

8

>   provided by the Legislature. For the purposes of this paragraph, "victim of a crime" means: a) a person who has suffered physical or psychological injury or has incurred loss of or damage to personal or real property as a result of a crime or an incident involving another person operating a motor vehicle while under the influence of drugs or alcohol, and b) the spouse, parent, legal guardian, grandparent, child or sibling of the decedent in the case of a criminal homicide.

N.J. Const. art. I, ¶ 22. Thus, the VRA addresses a criminal victim's rights during criminal proceedings. *See New Jersey v. Tedesco*, 69 A.3d 103, 113 (N.J. 2013) (addressing "a series of changes in the law [that] has steadily strengthened the rights of victims to participate in criminal proceedings," which included the VRA).

Here, Kirby alleges that Botta and the BCPO's actions surrounding the prosecution of Jacob and Julian violated his right to be treated with dignity and compassion, to be informed of the process, to be notified whether his presence was necessary, to be notified of an adjournment or cancellation in any court proceeding, and to be advised of the case's progress and final disposition along with the right to confer with a prosecutor's representative.[8] FAC ¶ 100. As for the factual allegations that support Plaintiff's claim, Plaintiff pleads that when he filed his criminal complaints against Jacob and Julian, he was informed that the complaints would be reviewed for probable

---

[8] Although Kirby alleges a violation of the VRA, the language in Count IX setting forth the alleged violations of the VRA is actually a direct quotation of the CVBOR. *See* N.J. Stat. Ann. § 52:4B-36(a)-(b), (g), (k). Thus, it appears that Kirby is attempting to circumvent the Court's prior dismissal of his CVBOR claim. Although Kirby does not assert a CVBOR claim in the FAC, Kirby still argues that the text of the N.J. Stat. Ann. § 52:4B-36(r) provides a private right of action. BCPO Opp. Br. at 8-9. Subsection (r) of the CVBOR allows a crime victim to make an appearance, file a motion or present an argument in "a proceeding implicating the rights of the victim." N.J. Stat. Ann. § 52:4B-36(r). This statutory language allows a crime victim to join into an already existing proceeding. It does not permit a victim to initiate a stand-alone proceeding as Kirby attempts to do here. Accordingly, Kirby still fails to establish that there is a private right of action to assert a civil claim based on an alleged violation of the CVBOR. Further, as discussed above, even if Kirby did establish that there was a private right of action, he cannot amend the FAC to assert a claim under the CVBOR through his opposition brief.

9

cause, and if probable cause was found, would be forwarded to the BCPO for review. *Id.* ¶ 46. The following week, Plaintiff's attorney was informed that a judge found probable cause and the complaints were forwarded to the BCPO. *Id.* ¶ 47. About a month later, Plaintiff's attorney was told that the matter had been downgraded and remanded to the municipal court for prosecution. *Id.* ¶ 48. Plaintiff's attorney asked for a written explanation but neither he nor Plaintiff ever received a response. Further, at the first appearance, Botta, the municipal prosecutor, made an oral application to dismiss the complaints, which was granted. *Id.* ¶ 57. Plaintiff maintains that he was never contacted to discuss this strategic decision. *Id.* ¶ 58.

The BCPO contends that Plaintiff fails to state a claim as to Count IX. BCPO Br. at 18-20. Plaintiff explains that his VRA claim is based on Defendants' "duty to keep victims informed and allow them to have input." BCPO Opp. at 7. This argument is largely unsupported by Plaintiff's allegations. Namely, the FAC reflects that Plaintiff was in communication with the BCPO, and that it did keep him informed about the status of the case. *See* FAC ¶¶ 46-48. What Plaintiff really seems to take issue with is the BCPO's failure to provide him with an explanation about why the charges were downgraded. *See* BCPO Opp. Br. at 7. The reason for a prosecutor's decision, however, is different than keeping a victim apprised of the case status. Critically, Plaintiff fails to provide any legal authority establishing that Plaintiff was legally entitled to receive the explanation he asked for, nor is such a right reflected in the VRA. *See* N.J. Const. art. I, ¶ 22. Thus, to the extent that Plaintiff's claims are based on the BCPO's failure to communicate, it appears that Defendant was treated fairly and with respect, at least as contemplated by the VRA. This aspect of Plaintiff's claim, therefore, is dismissed for failure to state a claim.

The second aspect of Plaintiff's VRA claim is that he was not allowed to have input in the criminal case. Essentially, Plaintiff alleges that the BCPO and Botta never reached out to him for

his input and ignored his desire for the charges to move forward. BCPO Opp. at 12. These allegations seem to fall squarely into the confines of prosecutorial immunity. But the BCPO and Botta both incorrectly argue that prosecutors are entitled to absolute immunity. BCPO Br. at 6-8; Botta Br. at 6-9. This would be a correct recitation of the law if Plaintiff asserted his claim under Section 1983. *See Newsome v. City of Newark*, No. 13-6234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014) ("Under federal law, prosecutors have absolute immunity from civil liability for their conduct in their role as prosecutors."). But Plaintiff's sole claim against the BCPO and Botta is asserted under the NJCRA. New Jersey does not afford prosecutors absolute immunity. *Cashen v. Spann*, 334 A.2d 8, 13 (N.J. 1987) ("Thus it is clear that New Jersey case law to date has not equated prosecutorial immunity with its judicial counterpart and reflects the philosophy that there are indeed circumstances in which a prosecutor will incur civil liability for his official conduct."). Because the BCPO and Botta do not apply the correct law, the Court cannot determine whether either Defendant is immune from suit in this matter. Consequently, the BCPO and Botta's motions are denied on these grounds.

Finally, the BCPO argues that Count IX must be dismissed as to it because it is not a "person" amenable to suit under the NJCRA. BCPO Br. at 10-15. The "NJCRA was modeled after § 1983, [and so] courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and citation omitted). Due to Eleventh Amendment protections, neither a State, arms of the state, nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because there is no express waiver of sovereign immunity in the NJCRA and because the NJCRA is modeled after § 1983,

11

numerous courts have also concluded that New Jersey is similarly immune from suit under the NJCRA. *See Brown v. State*, 124 A.3d 243, 255 (N.J. App. Div. 2015), *rev'd on other grounds,* 165 A.3d 735 (N.J. 2017) ("Given that the Legislature did not choose to include an express waiver of sovereign immunity in the Civil Rights Act and that the State enjoys immunity under the analogous § 1983, we conclude that the State is immune from a suit for damages under the Civil Rights Act."); *see also Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012) (disagreeing with argument that "the word 'person' should be interpreted differently in the NJCRA context than in § 1983"). This Court reaches the same conclusion – that the state is immune from suit under the NJCRA. Eleventh Amendment immunity, however, does not extend to counties and municipalities. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 813-14 (3d Cir. 1991).

In New Jersey, county prosecutors' offices operate in dual county and state role. "'[W]hen [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State.' When county prosecutors perform administrative functions 'unrelated to the duties involved in criminal prosecution,' however, they act as county officials." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 855 (3d Cir. 2014) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)); *see also Wright v. State*, 778 A.2d 443, 455 (2001) ("We are persuaded that when county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the responsibility of the State and for which the Attorney General is ultimately answerable."). The administrative functions "must be *entirely unrelated* to the duties involved in criminal prosecution." *Coleman*, 87 F.3d at 1506 (emphasis added). In *Coleman*, for example, the Third Circuit determined that when a county prosecutor made employment decisions, he or she

was a county official rather than a state actor. *Id.* Here, Plaintiff's remaining allegations as to the BCPO are that the BCPO disregarded Kirby's input as to how the criminal cases should proceed. These allegations relate to the BCPO's prosecutorial functions and relate to a criminal prosecution. Consequently, the BCPO is considered an arm of the state with respect to Count IX.

Count IX, therefore, is dismissed as to the BCPO with prejudice due to sovereign immunity.

## IV. CONCLUSION

For the foregoing reasons, the BCPO's motion (D.E. 51) is **GRANTED in part** and **DENIED in part**, the County's motion (D.E. 69) is **GRANTED**, and Botta's motion (D.E. 53) is **DENIED**. Count V is dismissed without prejudice and Count IX is dismissed with prejudice as to the BCPO. Plaintiff has thirty (30) days to file an Amended Complaint that cures the deficiencies noted herein with respect to Count V. If Plaintiff fails to do so, Count V will be dismissed with prejudice. Moreover, if Plaintiff files an amended pleading that includes a claim against Botta, Botta is granted leave to file a renewed motion to dismiss Count IX based on a correct application of the law. If Plaintiff does not file an amended pleading, after thirty days, Botta may also file his renewed motion. An appropriate Order accompanies this Opinion.

Dated: December 14, 2021

                                                                          John Michael Vazquez, U.S.D.J.