<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN KIRBY,<br><br>                          Plaintiff,<br><br>    v.<br><br>BOROUGH OF WOODCLIFF LAKE,<br>WOODCLIFF LAKE POLICE<br>DEPARTMENT, DENNIS DEANGELIS,<br>ANTHONY JANICELLI,<br><br>                          Defendants. | Civil Action No. 20-01670 (SDW) (JBC)<br><br>**OPINION**<br><br>August 20, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendants Borough of Woodcliff Lake, Woodcliff Lake Police Department, Sergeant Dennis DeAngelis, and Chief of Police Anthony Janicelli's (collectively "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule"). (D.E. 110). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' motion is **GRANTED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The events underlying this dispute occurred at a wedding in Bergen County on February 17, 2018. Plaintiff attended the wedding of his then-girlfriend Tammy Kwilecki's son Zachery McKean. Plaintiff and Kwilecki stayed at the Hilton Woodcliff Lake ("the Hilton") room 465 located on the fourth floor. In the early hours of Sunday, February 18, 2018, Woodcliff Lake

Police Department received a call from the Hilton about a fight in progress in room 465. Sergeant DeAngelis ("Sgt. DeAngelis") was the first to arrive to the scene. He met with the Hilton's Security Officer Andrew Villa who informed him of a physical altercation that occurred on the fourth floor. (D.E. 110 at 3.) By this time the fight had ended so Sgt. DeAngelis and Villa attempted to clear the crowded hallway of onlookers. Woodcliff Lake Police Officer Paul Brown was the second officer to arrive on the scene. Sgt. DeAngelis and Officer Brown met with Kwilecki who described her altercation with her boyfriend, Plaintiff John Kirby. She explained that earlier that evening, Plaintiff had been drinking and became agitated with her and an argument ensued. Once the couple arrived at the Hilton, Kwilecki visited her friends to discuss the nature of the argument. When she returned to her hotel room, the couple again argued. Plaintiff followed her into the bathroom where Kwilecki claimed he told her she was "gonna die tonight," grabbed her by the throat and pinned her to the wall. (*Id.* 110 at 4.) She struggled to break free and slipped and fell backwards striking her head either on the sink or on the toilet. (*Id.* at 4.) She was able to escape and ran out the hotel room door where she was met by her family and/or friends who "were outside the room in the hallway banging on the door attempting to help her." (*Id.* at 5.) Kwilecki stated that Plaintiff struck and injured her wrist when he slammed the door shut. Sgt. DeAngelis observed injuries to Kwilecki's neck, and lacerations on her mouth, left wrist, and behind her left ear.

Sgt. DeAngelis interviewed Kwilecki's friends who were present at the scene attempting to console her. They described hearing her scream from inside the room but were unable to enter the room to help her. (*Id.* at 5.) After the interviews, Sgt. DeAngelis contacted Detective Keith Kalmbach and advised him that there had been a "domestic violence situation with a mandatory arrest with injuries to the victim." (*Id.* at 5.) Kwilecki was taken by ambulance to Valley Hospital

in Ridgewood, New Jersey.  Kwilecki provided a sworn statement with the same details to Detective Kalmbach.  (D.E. 110 at 6.)  Sgt. DeAngelis and Officer Brown interviewed Plaintiff together in his hotel room.  Plaintiff described the incident from his perspective.  He stated that Kwilecki's sons Julian and Jacob McKean, "the McKean Brothers," entered his hotel room and viciously attacked him, striking him repeatedly in the face and body with closed fists.  (D.E. 115-2 at 6.)  The officers attempted to locate the McKean Brothers, but one was nowhere to be found and the other had been sleeping in his hotel room with his wife and children and appeared unaware of any assault.   Plaintiff was advised that he could sign a civilian complaint against one or both men, but Plaintiff declined, stating that he wanted to check with his attorney first.  (D.E. 110 at 7.)

Detective Kalmbach contacted the on-call Assistant Prosecutor Nicholas Ostuni, who advised Kalmbach to put the complaint on a warrant.  (*Id.* at 8.)  Sgt. DeAngelis reported the incident and the details in the complaint to Judge Harry Norton, J.M.C., who found enough probable cause to issue an arrest warrant.  (*Id.* at 8.)  Plaintiff was informed that he had been accused of assaulting Kwilecki and that such an assault fell under the umbrella of a domestic violence assault which required his arrest, photographs, and fingerprints.  Plaintiff was charged with one count of simple assault.  *See* N.J.S.A. 2C:12-1(a)(1).  Despite Plaintiff indicating that he had been struck during the altercation, the officers noted that there were no obvious signs of injury to Plaintiff.   Nevertheless, Plaintiff was transported by ambulance to Hackensack University Medical Center ("HUMC") and treated in the emergency room for facial fractures.  He was discharged and transferred into the custody of the Bergen County Sheriff's Office.  Detective Kalmbach served Plaintiff with the Complaint-Warrant and explained that he would be held at the Bergen County Jail until he could have his first appearance with a judge.

After transferring Plaintiff to the Bergen County Jail, Detective Kalmbach and fellow officers met with Kwilecki back at the Hilton and were escorted to room 465 to retrieve Plaintiff's personal belongings.  The Hilton agreed to hold Plaintiff's clothing and suitcases until he was released from jail and able to pick them up himself.  Officers took note of what was being left with the Hilton and decided to retrieve the valuables (jewelry, cash, etc.) from the hotel room's safe for safekeeping at police headquarters.

On Wednesday, February 21, 2018, Plaintiff appeared before Judge James X. Sattely and pled guilty to one count of harassment.  He admitted to grabbing and/or shoving Kwilecki in an offensive way for purposes of harassing her.  Plaintiff affirmed that he was entering his plea knowingly, voluntarily without threat, duress, or coercion.  Judge Sattely accepted Plaintiff's plea and on February 21, 2018, a Judgment of Conviction was entered for Harassment – Striking/Offensive Touching/Threats, which was a modification from the original charge of Simple Assault.  The conviction carried a monetary penalty including court costs and fines. (D.E. 110 at 11.)

Upon his release, Plaintiff returned to the Hilton to retrieve his belongings.  The Hilton contacted the Woodcliff Lake Police Department to alert them to Plaintiff's unwelcomed presence on the property.  Sgt. DeAngelis arrived at the hotel and informed Plaintiff that some of his belongings were being held at the police station and that he needed to go down to the station to complete the mandatory processing for his arrest, which was interrupted when he was transferred to the hospital for treatment.  At the station, Plaintiff was processed, given his belongings, and a copy of the restraining order that Kwilecki had applied for which would protect her in her home state of Florida.  (*Id.* at 10.)  Plaintiff indicated that he wanted to sign complaints against the McKean brothers, his alleged attackers.  He was given the forms but then indicated that he would

fill them out at a later time.  (*Id.* at 13.) Once processed, Plaintiff was transported back to the Hilton.

On February 17, 2020, Plaintiff filed the instant suit against Tammy Kwilecki, the Borough of Woodcliff Lake, Woodcliff Lake Police Department, Sgt. DeAngelis, Chief of Police Janicelli, Bergen County, the Prosecutor's Office and all others involved in his arrest.  In his ten-count Amended Complaint, he alleges that: Defendants violated his Fourth, Fifth, and Eighth Amendment rights; and Defendants violated his rights, privileges, and immunities under the Constitution of the State of New Jersey and committed tortious acts including false imprisonment, intentional and negligent infliction of emotional distress, and malicious prosecution.  (D.E. 77.) On December 14, 2021, Judge Vasquez, the former presiding judge, partially granted Defendants' motion and dismissed several defendants and counts.  On June 23, 2022, in response to Defendants' renewed motion to dismiss Plaintiff's Second Amended Complaint, Judge Vasquez dismissed additional defendants and counts. (D.E. 86.)  This matter was subsequently transferred to this Court.  Defendants filed the instant motion for summary judgment on the only remaining counts properly before this Court, Counts I–IV and VII–VIII.  Briefing was timely completed.  (D.E. 109, 115, 116, and 117.)

## II.   **LEGAL STANDARD**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002); *see* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A genuine issue of material fact exists where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The judge's function at the summary

judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Tse*, 297 F.3d at 218; *see Anderson*, 477 U.S. at 249.

## III.   <u>DISCUSSION</u>

Plaintiff raises a number of claims under 42 U.S.C. § 1983.  A Plaintiff may recover damages under 42 U.S.C. § 1983, by establishing: (1) that their "rights, privileges, or immunities secured by the Constitution and laws" have been violated (2) by any person who was acting under the color of state or federal law.  An action under the color of state law "requires that one liable under § 1983 [has] exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (internal quotation and citation omitted).  Because Plaintiff is suing state law enforcement officers and other state officials in their official capacity for violating his state and federal constitutional rights during and after his arrest, this Court finds these Defendants were indeed acting under the color of state law.  Therefore, to prevail on summary judgment on the 42 U.S.C. § 1983 claims, Defendants must either demonstrate that there are no material facts to support the alleged violation of rights or demonstrate the applicability of qualified immunity.  *See Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

### a.  **Violation of Fourth Amendment Rights**

i.  *Probable Cause*

Plaintiff alleges that his Fourth Amendment rights were violated when Sgt. DeAngelis and fellow officers of the Woodcliff Lake Police Department illegally stopped and detained him for an unreasonable period of time without probable cause.  (D.E. 77 at 13.)  He argues that there were two seizures in this matter, the first on February 18, 2018 (the night of the altercation with Kwilecki), and the second on February 21, 2018 (the day he retrieved his belongings from the Hilton).  (D.E. 115 at 4.)  As for the first seizure, Plaintiff argues that the officers never conducted a full investigation of the assault on him, never located the alleged assailant Jacob McKean, and did not pay proper attention to his injuries that prompted him being admitted to the emergency room.  He also denies that officers had a reasonable basis to believe that he assaulted Kwilecki and thus challenges the validity of the arrest warrant.  With respect to the second seizure, Plaintiff argues that he entered a guilty plea in order to secure his immediate release from custody.  Thus, Plaintiff argues, when he was apprehended at the Hilton later that same day to complete his processing from his arrest, there was no basis because it occurred *after* the criminal matter was already closed.  (D.E. 115 at 12–15.)

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  Thus, a warrantless arrest without probable cause violates the Fourth Amendment.  *Id.* "[S]ince false arrest . . . hinge[s] on probable cause, the constitutional violation question . . . turns on whether a '"reasonable officer could have believed that probable cause existed" to arrest' the plaintiff at that time."  *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (quoting *Blaylock v. City of Philadelphia*, 504 F.3d 405, 411 (3d Cir. 2007)).  "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed

by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).  Further,

New Jersey law provides that:

> [w]hen a person claims to be a victim of domestic violence, and where a law enforcement officer responding to the incident finds probable cause to believe that domestic violence has occurred, the law enforcement officer shall arrest the person who is alleged to be the person who subjected the victim to domestic violence and shall sign a criminal complaint if . . . [t]he victim exhibits signs of injury caused by an act of domestic violence[.]

New Jersey Prevention of Domestic Violence Act codified as N.J. Stat. Ann. § 2C:25-21(a)(1)

(West 2023) ("PDVA").  Additionally, a person is guilty of assault when he attempts to cause or

purposely, knowingly, or recklessly causes bodily injury to another.  N.J. Stat. Ann. § 2C:12-1

(West 2023).  "When an arrest is made pursuant to a valid warrant, the inquiry is based on whether

'the officer, with at least a reckless disregard for the truth, made false statements or omissions that

create[d] a falsehood in applying for a warrant,' and (2) 'whether those assertions or omissions

were material, or necessary, to the finding of probable cause.'"  *Jecrois v. Sojak*, 736 F. App'x

343, 346 (3d Cir. 2018) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016))

(alteration in original) (internal citation omitted).

Upon his arrival at the Hilton, Sgt. DeAngelis assessed the scene.  He interviewed

witnesses, obtained a sworn victim statement from Kwilecki, and observed injuries to her neck,

mouth, left wrist and a laceration behind her left ear that were consistent with the physical

altercation she had described.  Because Plaintiff and Kwilecki were admittedly in a romantic

relationship, Sgt. DeAngelis reasonably concluded that the altercation qualified as an assault that

fell under the purview of the PDVA.  Sgt. DeAngelis then relayed the details he had gathered to

Assistant Prosecutor Nicholas Ostuni and was advised to put the victim's complaint in a warrant.

He then presented the warrant to Judge Harry Norton who found probable cause to support

Plaintiff's arrest.  Though Plaintiff denies that he assaulted Kwilecki and instead asserts that he

was assaulted by Kwilecki's sons, there was no other corroborating evidence of such assault, certainly not enough to undermine the substantial evidence that he had been the one to assault Kwilecki. Even if the injuries Plaintiff sustained had been by the hands of Kwilecki's sons, that would not have stripped officers of the probable cause they had to conclude that the injuries Kwilecki sustained had been caused by Plaintiff.

On the foregoing facts, probable cause existed to arrest Plaintiff. Thus, the arrest was not a violation of Plaintiff's Fourth Amendment rights.

As to what Plaintiff refers to as his "second arrest" or seizure, New Jersey law requires law enforcement officers to follow a set of procedures upon a defendant's arrest (i.e., "processing"). *See* N.J. Stat. Ann. § 2C:25-31 (West 2023). On February 18th, Plaintiff was arrested but then transported to the hospital for treatment and later released to the custody of the Bergen County Sheriff's Office where he was held pending his court appearance. After his court appearance and release from custody, Plaintiff was informed that his belongings were being held at the Hilton. Once the Plaintiff went to the Hilton, the Woodcliff Lake Police Department was notified and dispatched. Sgt. DeAngelis arrived at the Hilton and explained to Plaintiff that several of his belongings were also being held at police headquarters and that he was required to complete the processing procedure from his initial arrest, which had been interrupted due to his need for medical care. Sgt. DeAngelis escorted Plaintiff back to police headquarters and once he completed processing and retrieved his belongings, Plaintiff was free to leave. Thus, this second encounter with Sgt. DeAngelis and Woodcliff Police Department was not a "second arrest" but rather "processing" mandated by state law he was charged under. Consequently, this encounter was not a violation of his Fourth Amendment rights.

With respect to Plaintiff now challenging the validity of his guilty plea as a means to support his § 1983 claims, it is well settled that "in order to recover damages for allegedly unconstitutional convictions . . . caused by actions whose unlawfulness would render a conviction or sentence invalid, [a] plaintiff must prove that the conviction . . . has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination[.]" *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). At the time Plaintiff entered his guilty plea, he affirmed that he was entering his plea knowingly, voluntarily, and without threat, duress, or coercion. To date, the state court has not reversed his conviction and there is no evidence to suggest that his conviction has been expunged or modified in any way. Without more, Plaintiff is precluded from challenging the validity of his conviction in this action.

### b. Violation of Fifth and Fourteenth Amendment Rights

Plaintiff also asserts a violation of his Eighth, Fourteenth, and Fifth Amendment rights[1]. Plaintiff alleges his Eighth Amendment rights, against cruel and unusual punishment were violated when Defendants "removed [him] from his hospital bed" and took him into custody. (D.E. 115 at 9.) The Eighth Amendment "was designed to protect those convicted of crimes, and consequently the [Cruel and Unusual Punishment] Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted); *see also Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989) (noting that the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply "until after conviction and sentence"). Because Plaintiff was

---

[1] The Fifth Amendment provides, inter alia, that no person "shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Plaintiff's Fifth Amendment rights violation claim fails because "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action." *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983). Plaintiff has not brought suit against any federal actors and the rights provided by the Fifth Amendment do not apply to the actions of state officials in this case.

not convicted at the time he was being treated at the hospital, he is not within the ambit of the Eighth Amendment. *Hubbard*, 399 F.3d at 160. However, the Due Process Clause of either the Fifth or the Fourteenth Amendment protects pretrial detainees at least as much as the Eighth Amendment protects convicted criminals.[2] *See Bistrian v. Levi*, 912 F.3d 79, 91 n.19 (3d Cir. 2018); *see also Hubbard v. Taylor*, 399 F.3d 150, 165–66 (3d Cir. 2005) (holding that the Eighth Amendment "establishe[s] a floor"). Courts apply the same "deliberate indifference to serious medical needs of prisoners" standard afforded under the Eighth Amendment, to pretrial detainees under the Fourteenth Amendment. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987))[3]. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)) (internal quotation marks omitted). Plaintiff has failed to establish that there is a genuine issue of material fact that the officers acted with deliberate indifference to a substantial risk of harm. Simply put, Plaintiff was not denied medical treatment. *See Tse*, 297 F.3d at 218. To the contrary, despite Officers noting no obvious signs of injury to the Plaintiff, he was nevertheless transported to HUMC for treatment or observation. Plaintiff was not transferred to the custody of the Bergen County Sheriff's Office until after he was treated and discharged.

---

[2] The Supreme Court has repeatedly held that the Due Process Clause rather than the Eighth Amendment is appropriate when considering the claims of pretrial detainees. Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, n. 16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

[3] Similarly, the Third Circuit has continued to rely on Eighth Amendment standards when addressing medical claims of pretrial detainees. *See e.g. Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023) ("Because the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment.").

### c. Qualified Immunity

Defendants raise the affirmative defense of qualified immunity to shield them from damages claimed under 42 U.S.C. § 1983.  To overcome qualified immunity Plaintiff must establish "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Mirabella*, 853 F.3d at 648.  In this matter, even if there was a viable challenge to the existence of probable cause or the validity of the arrest warrant, neither the arrest nor the subsequent processing was unreasonable or unlawful within the meaning of the Fourth Amendment.

"The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Est. of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Graham*, 490 U.S. at 397).  Here, Defendant Officers arrived at the scene to a crowded hall of people discussing some altercation that had just occurred.  Officers then located the victim who gave a statement which was corroborated by her injuries and the accounts of other witnesses.  The statements described a physical altercation consistent with simple assault and the provisions of the PDVA and its relevant regulations.  Defendant Officers acted in good faith by seeking the advice of counsel and obtaining a warrant based on the information they had gathered.

Similarly, the provisions of the PDVA provide a procedure that must be followed by law enforcement.  As previously addressed, this process was interrupted when Plaintiff was transported to the hospital for medical treatment.  Defendants' second encounter with Plaintiff was thus necessary to complete the process triggered by his arrest and was, therefore, also reasonable.

Because there are no material facts in dispute that support that Plaintiff's clearly established rights were violated, Defendants are entitled to qualified immunity. Further, the PDVA specifically safeguards against such claims for damages. Under the section entitled, "Immunity from Civil Liability," it provides:

> A law enforcement officer or a member of a domestic crisis team or any person who, in good faith, reports a possible incident of domestic violence to the police shall not be held liable in any civil action brought by any party for an arrest based on probable cause, enforcement in good faith of a court order, or any other act or omission in good faith under this act.

N.J. Stat. Ann. § 2C:25-22 (West 2023). Consequently, Defendants are entitled to immunity on the claims related to the PDVA as well.

### d. Claims against the Borough of Woodcliff Lake

Citing *Monell v. Dept. of Social Services of the City of New York*, Plaintiff sues the Borough of Woodcliff Lake under 42 U.S.C. § 1983 alleging that the Borough failed to adequately train and supervise its sworn officers which resulted in deliberate indifference to Plaintiff. 436 U.S. 658, 694 (1978). Defendants argue that these claims fail because there is no evidence to support a constitutional violation.

While it is true that there are no constitutional violations to support a *Monell* claim as to the officers, the Borough may be held liable even when its officers are not. *Mervilus v. Union Cnty.*, 73 F.4th 185, 196 (3d Cir. 2023) (citing *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 305 (7th Cir. 2010)). Indeed, "[u]nder *Monell*, municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Mervilus*, 73 F.4th at 196-97 (quoting *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). "But where a finding for the individual defendant necessarily means the plaintiff

suffered no constitutional deprivation, there is no basis for a *Monell* claim, and thus it too must fa[i]l." *Mervilus*, 73 F.4th at 197.  In other words, to survive summary judgment on his *Monell* claim, Plaintiff needs to establish that the Borough is also liable for his injury.

"A plaintiff can establish § 1983 liability of a municipality two ways: by establishing a custom or policy.  The established custom or policy, however, must be 'the "moving force" behind the injury alleged.'" *Lesher v. Zimmerman*, 822 F. App'x 116, 121 (3d Cir. 2020) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 397 (1997)).  "Policies include 'a statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers,' while a custom is a permanent and well-established practice." *Lesher*, 822 F. App'x at 121 (alteration in original) (quoting *Monell*, 436 U.S. at 690).  A municipality can only be held liable under § 1983 for failing to adequately train employees when its "failure . . . in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants[.]" *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  "[T]he notion of deliberate indifference contemplates a danger that must at least be foreseeable." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997).

Plaintiff has not identified any policy or custom as a moving force behind the injury he alleges, nor has he identified a deficiency in the training standards of law enforcement that would have prevented his alleged injury.  Instead, Plaintiff expresses frustration with standard operating procedures followed by officers when enforcing provisions of the PDVA that—according to him— should clarify when and by whom an inmate is processed and fingerprinted.  Further, Plaintiff has not established that Defendant Chief of Police Janicelli[4] had notice of a deficiency in training

---

[4] Under New Jersey law, "the Chief of Police [is] the relevant policymaker" for purposes of establishing deliberate indifference on the part of the municipality.  *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 913 (3d Cir. 2003).

standards that could lead to the constitutional violations alleged here and consciously disregarded that risk. *See Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 411. Plaintiff's constitutional rights were not violated by the officers during his arrest and subsequent processing and Plaintiff has not proffered evidence sufficient to support his *Monell* claim.[5]

### e. State Tort Claims (Counts VII & VIII)

In addition to his federal claims arising under 42 U.S.C. §1983, Plaintiff also raises several tort claims arising under New Jersey state law. A district court may decline to exercise supplemental jurisdiction over a state law claim "under 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it has original jurisdiction." *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017). As this Court has already determined that summary judgment is appropriate in the foregoing federal claims, and because all parties are New Jersey citizens and/or New Jersey entities and so there is no diversity jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state claims and dismisses those claims without prejudice.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        James B. Clark, U.S.M.J.

---

[5] This Court notes that Judge Vasquez addressed this issue in his June 23, 2022. Opinion and Order regarding Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. (D.E. 86). He determined that Plaintiff could not rely solely on his own experiences to establish that there was a custom or practice of ignoring pretrial detainee's medical needs at the Bergen County jail. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) ("[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy." (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985))).